UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERNESTINE BELL, ALICIA STEWART, AND DAVID MOHUN, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, *Plaintiffs,* | § § § § § | Civil Action No. 3:26-cv-00271 |
| v. | § § § | |
| TEXAS WINDSTORM INSURANCE ASSOCIATION; HANSEN SCOTT HOLDINGS, LLC, SUCCESSOR TO AND FORMERLY KNOWN AS LEADING EDGE CLAIMS SERVICE, LLC; RYZE CLAIMS SOLUTIONS, LLC; DAVID R. DEVILBISS; JAMES JARASCZESKI; AND DOES 1–20, *Defendants.* | § § § § § § § § § | |

**DEFENDANTS HANSEN SCOTT HOLDINGS, LLC AND DAVID R. DEVILBISS'S MOTION TO DISMISS**

Defendants Hansen Scott Holdings, LLC, Leading Edge Claims Service, LLC, and David R. DeVilbiss move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' civil RICO claims. This case concerns the amounts paid on three Texas Windstorm Insurance Association ("TWIA") claims. Plaintiffs now seek treble damages under RICO. The McCarran-Ferguson Act bars that effort, and the Complaint independently fails to plead mail or wire fraud with the particularity Rule 9(b) requires.

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDING. .... 4

II. ISSUES TO BE RULED UPON BY THE COURT .... 4

III. APPLICABLE LAW .... 5

A. *McCarran-Ferguson Act* .... 5

B. *Rule 9(b)*. .... 6

IV. SUMMARY OF THE ARGUMENT .... 7

V. FACTUAL BACKGROUND .... 8

VI. ARGUMENT & AUTHORITIES. .... 10

A. *The McCarran-Ferguson Act Bars Plaintiffs' RICO Claims* .... 10

B. *The Complaint Does Not Plead Fraud with Particularity.* .... 15

VII. CONCLUSION. .... 17

VIII. INCORPORATION BY REFERENCE .... 18

IX. PRAYER .... 18

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5
*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003) .......... 7, 15, 16
*Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219 (5th Cir. 2010) .......... 17
*Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Development, Inc.*, 972 F.3d 684 (5th Cir. 2020) .......... 7
*Crosswell v. Martinez Cecias Rodriguez*, 120 F.4th 177 (5th Cir. 2024) .......... 5, 7, 15, 16
*Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003) .......... 6, 13
*Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) .......... 5, 6, 11, 13
*SFR Servs., LLC v. United Prop. & Cas. Ins. Co.*, No. 8:22-CV-109-KKM-SPF, 2022 WL 7055906, at *1 (M.D. Fla. Oct. 12, 2022) .......... 6, 8, 14, 16
*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004) .......... 5, 15
*Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545 (Tex. App.—Houston [1st Dist.] 2016, no pet.) .......... 11
*Tex. Windstorm Ins. Ass'n v. Pruski*, 689 S.W.3d 887 (Tex. 2024) .......... 8, 11
*United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450 (5th Cir. 2005) .......... 7

## Statutes

15 U.S.C. § 1011 et seq. .......... 5
15 U.S.C. § 1012(b) .......... 5, 11
Tex. Ins. Code § 542A.002(b). .......... 13
Tex. Ins. Code § 2210.001 .......... 9, 11
Tex. Ins. Code § 2210.014(a)–(b) .......... 13
Tex. Ins. Code § 2210.571(2) .......... 12, 14
Tex. Ins. Code § 2210.572 .......... 12, 14
Tex. Ins. Code § 2210.574 .......... 12
Tex. Ins. Code § 2210.575–.576 .......... 13

## I. NATURE AND STAGE OF THE PROCEEDING

1. Plaintiffs Ernestine Bell, Alicia Stewart, and David Mohun bring this putative class action against the Texas Windstorm Insurance Association, Hansen Scott Holdings, LLC, alleged successor to Leading Edge Claims Service, LLC, RYZE Claims Solutions, LLC, David R. DeVilbiss, and others. (Pls.' Orig. Compl., ECF No. 1). The Complaint asserts civil RICO claims under 18 U.S.C. §§ 1962 and 1964 based on alleged mail and wire fraud arising from the review and revision of Plaintiffs' Hurricane Beryl claim estimates. (Pls.' Compl. ¶¶ 1–4, 27, 93–245, ECF No. 1).

2. Hansen Scott, Leading Edge, and DeVilbiss move to dismiss under Rule 12(b)(6) because the McCarran-Ferguson Act bars the RICO claims and the Complaint does not plead the alleged predicate fraud with the particularity Rule 9(b) requires.

## II. ISSUES TO BE RULED UPON BY THE COURT

3. This motion presents two issues:

A. Whether the McCarran-Ferguson Act bars Plaintiffs' civil RICO claims because applying RICO would impair Texas's statutory framework governing TWIA claims; and

B. Whether the Complaint pleads the alleged mail and wire fraud against Hansen Scott, Leading Edge, and DeVilbiss with the particularity required by Rule 9(b).

Both issues require dismissal.

## III. APPLICABLE LAW

4. A motion challenging the sufficiency of fraud-based RICO claims is governed by Rule 12(b)(6), with the alleged predicate fraud also subject to Rule 9(b)'s heightened pleading requirement. To survive dismissal, the Complaint must contain well-pleaded factual allegations that, accepted as true and viewed in the light most favorable to Plaintiffs, state a claim for relief that is plausible on its face. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The Court need not accept legal conclusions, conclusory allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Because Plaintiffs' RICO claims depend on alleged mail and wire fraud, those predicate acts must also be pleaded with particularity under Rule 9(b), and the Complaint must plausibly connect the alleged misconduct to each moving Defendant rather than rely on collective allegations. *Crosswell v. Martinez Cecias Rodriguez*, 120 F.4th 177, 184–85 (5th Cir. 2024); *Southland Securities Corp. v. INSpire Insurance Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

### A. McCarran-Ferguson Act

5. The McCarran-Ferguson Act (15 U.S.C. § 1011 et seq.) bars the application of a federal statute when: (1) the federal statute does not specifically relate to insurance; (2) the state law was enacted to regulate the business of insurance; and (3) applying the federal statute would "invalidate, impair, or supersede" the state law. 15 U.S.C. § 1012(b); *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). RICO does not specifically relate to insurance. *Humana*, 525 U.S. at 307. The third requirement turns on compatibility: "to impair state law, the federal law must either directly conflict with state regulation, frustrate

a declared policy, or interfere with an administrative regime." *Id.* at 310. The Fifth Circuit applies the same test and permits concurrent federal claims only when they do not frustrate state policy or disturb the State's administrative regime. *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 297–299 (5th Cir. 2003).

6. Accordingly, the question on this Rule 12(b)(6) motion is not whether RICO offers broader relief in the abstract. It is whether Plaintiffs' pleaded RICO theory would supplement Chapter 2210 of the Texas Insurance Code or impair the exclusive procedures and remedies Texas selected for claims relating to TWIA insured losses. As discussed below, applying RICO to Plaintiffs' claims would frustrate Chapter 2210's declared policy and impair its prescribed procedures and remedies. McCarran-Ferguson therefore bars Plaintiffs' RICO claims.

7. A federal court applying this framework dismissed materially analogous RICO claims alleging that an insurer and independent adjusting firms used altered hurricane-loss reports and estimates to underpay claims, concluding that RICO would impair the State's prescribed insurance regime. *SFR Servs., LLC v. United Prop. & Cas. Ins. Co.*, No. 8:22-CV-109-KKM-SPF, 2022 WL 7055906, at *3–4 (M.D. Fla. Oct. 12, 2022).

**<u>B. Rule 9(b)</u>**

8. Plaintiffs' RICO claims depend on alleged mail and wire fraud. Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead each alleged predicate fraud with particularity. The Complaint must state the "who, what, when, where, and how" of the alleged fraud. *Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Development, Inc.*,

972 F.3d 684, 698 (5th Cir. 2020). It must identify the challenged statement or communication, the identity of the person making the representation, when and where it occurred, and why it was fraudulent. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003).

9. Those requirements apply separately to each Defendant and each alleged fraudulent predicate act. *Crosswell*, 120 F.4th at 184. Allegations against "Defendants" or an "Enterprise" are not attributed to an individual defendant unless the Complaint pleads "specific facts, not mere conclusory allegations, which establish the enterprise." *Id.* at 184–85 (citations omitted). Further, the plaintiff must plead the specified facts alleging fraud as to each defendant, it may not "lump together the defendants." *Id.* Nor may Plaintiffs plead fraud on information and belief and rely on discovery to supply the missing fraud unless the facts are peculiarly within a defendant's knowledge and the Complaint states the factual basis for the belief. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 454 (5th Cir. 2005).

10. A federal court applied the same principle to materially analogous RICO allegations involving hurricane claims, altered reports and estimates, and independent adjusting firms, and dismissed the RICO claim where the complaint did not plead the required defendant-specific predicate fraud. *SFR Servs.*, 2022 WL 7055906, at *4–5.

## IV. SUMMARY OF THE ARGUMENT

11. Plaintiffs cannot turn three independent disputes over TWIA claim amounts into federal racketeering claims simply by relabeling the claim process as a criminal enterprise. The Texas Windstorm Insurance Act, Chapter 2210 of the Texas Insurance

Code, defines TWIA-related claims broadly, makes its remedies exclusive, directs amount-of-loss disputes to appraisal, restricts additional damages and theories of liability, and provides specific procedures for disputes over coverage.

12. As a result, the McCarran-Ferguson Act bars RICO from displacing that Texas framework, and *SFR Services* dismissed materially analogous RICO claims on that basis. The Complaint also independently fails to plead defendant-specific mail or wire fraud against Hansen Scott, Leading Edge, or DeVilbiss. Each defect requires dismissal of all three RICO counts.

## V. FACTUAL BACKGROUND

13**.** TWIA is not an ordinary market participant. The Texas Legislature created TWIA as an integral part of the State's statutory system for regulating the availability of windstorm and hail insurance in designated coastal areas. Tex. Ins. Code § 2210.001. Chapter 2210 governs TWIA's creation, purpose, organization, operations, claims procedures, and remedies. *Tex. Windstorm Insurance Association v. Pruski*, 689 S.W.3d 887, 890 (Tex. 2024).

14**.** The Legislature declared that adequate windstorm and hail insurance in Texas's seacoast territory is "necessary to the economic welfare of this state" and that, without it, "the orderly growth and development of this state would be severely impeded." Tex. Ins. Code § 2210.001. Chapter 2210 implements that policy by establishing TWIA as the residual insurer of last resort and governing the provision of coastal windstorm coverage, the administration of claims, and the resolution of claim disputes. *Id.* et seq.

.

15. Hurricane Beryl damaged Plaintiffs' coastal properties in July 2024. Each property was insured under a TWIA windstorm policy, and each Plaintiff submitted a claim to TWIA. (Pls.' Compl. ¶¶ 1, 5–8, 104–105, 136–137, 165–170, ECF No. 1). TWIA contractually assigned Leading Edge Claims Service, LLC—now alleged to be Hansen Scott Holdings, LLC—to inspect the properties and investigate the claims. Leading Edge assigned Lee Olivares as the field adjuster. (*Id.* ¶¶ 16, 33–34, 106, 140–141, 171–173).

16. The Complaint alleges that Olivares inspected Stewart's property on July 30, 2024, and Bell's and Mohun's properties on August 1, 2024. He prepared initial estimates and transmitted claim materials through the electronic workflow for review. (*Id.* ¶¶ 106–107, 140–145, 172–175).

17. Plaintiffs allege that DeVilbiss did not inspect the properties. They contend that he instead accessed Olivares's estimates through Xactimate/XactAnalysis, accepted collaboration or ownership permissions, revised the estimates, and returned them through the claim workflow. (*Id.* ¶¶ 16, 21–24, 81–83, 108–117, 146–153, 176–183).

18. Bell's claim supplies one pleaded example. Plaintiffs allege that XactAnalysis records show the DAVIDRJM account reducing Bell's estimate from $26,235.85 to $10,111.03 on August 9, 2024. (*Id.* ¶ 24). The Complaint alleges parallel revisions in the Stewart and Mohun claim files and further alleges that the claimant-facing estimates continued to identify Olivares as the estimator without separately identifying DeVilbiss's revisions. (*Id.* ¶¶ 26, 117, 152, 193, 197–198).

19. According to the Complaint, Leading Edge returned the reviewed claim materials to TWIA, which made the claim determinations and sent the estimates and claim

communications to Plaintiffs. (*Id.* ¶¶ 12, 20, 25, 32, 71–77, 121–123, 156–160, 184–199). Every alleged claim-handling event—including the mail and wire communications underlying Plaintiffs' RICO theory—occurred between July and October 2024. (*Id.* ¶¶ 5, 21–24, 75–77, 105–123, 130, 137–160, 168–199, 207, 219, 234). RYZE did not acquire Leading Edge until 2025, and Plaintiffs do not allege that RYZE participated in the claim-handling process. (*Id.* ¶ 35).

20. Beyond those claim-specific allegations, the Complaint frequently attributes the asserted scheme to "Defendants" or the "Enterprise" collectively. (*Id.* ¶¶ 51–84, 202–245). It also states that Plaintiffs expect discovery to supply additional routing records, server paths, email identifiers, file hashes, mailing logs, and electronic-payment records. (*Id.* ¶¶ 202–205).

21. Plaintiffs measure their alleged injury by the additional TWIA policy benefits they contend would have been payable without the challenged estimate revisions. (*Id.* ¶¶ 25, 28, 162, 199, 203, 258–286). They seek actual and treble damages and class relief under RICO based on those revisions and claim amounts.

## VI. ARGUMENT & AUTHORITIES

### A. The McCarran-Ferguson Act Bars Plaintiffs' RICO Claims

22. McCarran-Ferguson asks whether the federal claim supplements state insurance law or displaces the scheme the State chose. Congress supplied the rule:

> "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of

> insurance . . . unless such Act specifically relates to the business of insurance."

15 U.S.C. § 1012(b). RICO does not specifically relate to the business of insurance; Chapter 2210 does. *Humana*, 525 U.S. at 307; *Pruski*, 689 S.W.3d at 890. The resulting inquiry is whether Plaintiffs' RICO theory would operate consistently with Chapter 2210 or instead frustrate Texas policy or interfere with the statutory regime governing TWIA claims. *Humana*, 525 U.S. at 310. Plaintiffs seek to recover disputed TWIA policy benefits through treble damages and class relief outside Chapter 2210's exclusive procedures and remedial limits. That pleaded theory presents the precise displacement McCarran-Ferguson forbids.

23. Chapter 2210 establishes TWIA and prescribes the procedures and remedies governing claims under its policies. Tex. Ins. Code § 2210.001 et seq.; *Pruski*, 689 S.W.3d at 890. Texas courts enforce those limits. *See Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 551–52 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that Chapter 2210 barred an action over the amount of accepted coverage after the claimant failed to timely demand appraisal).

24. The Texas Legislature's 2011 amendments to Chapter 2210 established the claims procedures and remedial limitations governing claims against TWIA and its agents or representatives. Subchapter L-1 provides:

> This subchapter provides the exclusive remedies for a claim against the association, **including an agent or representative of the association** ….

Tex. Ins. Code Ann. § 2210.572(a) (entitled "Exclusive Remedies and Limitation on Award") (emphasis added).

25. Chapter 2210's applicability to TWIA's agents and representatives is reiterated in section 2210.571, which provides the following definition of "claim":

> 'Claim' means a request for payment under an association policy. The term also includes any other claim against the association, **<u>or an agent or representative of the association</u>**, relating to an insured loss, under any theory or cause of action of any kind, regardless of the theory under which the claim is asserted, the cause of action brought, or the type of damages sought.

Tex. Ins. Code § 2210.571(2) (emphasis added). That definition reaches the claim Plaintiffs pleaded, not merely the label they attach to it. Their alleged loss is the additional TWIA policy benefits they say would have been paid absent the challenged estimate revisions, performed by TWIA's representatives. (Pls.' Compl. ¶¶ 25, 28, 162, 199, 203, 258–286, ECF No. 1).

26. TWIA contracted with Leading Edge to furnish "field adjusting, estimating, supervisory, quality-control, or related claim services." (*Id.* ¶¶ 33–34). The Complaint alleges that Leading Edge and its assigned adjusters acted on TWIA's behalf by contacting claimants, inspecting properties, and preparing estimates and reports. (*Id.* ¶¶ 8, 11–12, 34, 53, 58, 60). It further alleges that TWIA retained oversight and final authority over the claim decisions:

> "TWIA's catastrophe plan calls for quality-control review, monitoring of desk examiners, and reinspection of properties to evaluate field-adjuster performance. Thus, even when an outside firm conducted the inspection, TWIA retained access to the system, the ability to review the work **<u>and final authority over the claim decision.</u>**"

(*Id.* ¶ 12). The Complaint alleges that Leading Edge and DeVilbiss performed inspection, estimating, review, quality-control, and related claim services for TWIA within its adjustment process. Those pleaded functions place them within the statutory terms as an agent or representative. Thus, Chapter 2210's limitations on liability and remedies apply to Leading Edge, Hansen Scott, and DeVilbiss as TWIA's agents or representatives.

27. Chapter 2210's exclusive remedies for claims against TWIA and its agents or representatives generally limit recovery to covered policy losses, foreclose additional, punitive, or penalty damages except as expressly authorized, and restrict the causes of action and remedies available for claims relating to TWIA-insured losses. Tex. Ins. Code § 2210.572. Those provisions define the substantive and exclusive boundaries the Texas Legislature has placed on claims arising from TWIA-insured losses.

28. Chapter 2210 also prescribes the process. Disputes over the amount of accepted coverage proceed through appraisal, which is binding subject to narrow vacatur grounds. *Id.* §§ 2210.574(b), (g)–(h). The statute provides: "Except as provided by Subsection (g), a claimant may not bring an action against the association with reference to a claim for which the association has accepted coverage in full." *Id.* § 2210.574(h).

Denied-coverage disputes follow a separate statutory path with limits on issues and recovery. *Id.* §§ 2210.575–.576.

29. *Humana* does not save Plaintiffs' claims. There, Nevada authorized private actions and punitive damages for the same alleged misconduct, so RICO's additional remedies complemented rather than displaced the State's enforcement scheme. *Humana*, 525 U.S. at 311–14. Likewise, *Dehoyos* allowed federal civil-rights claims that advanced a distinct federal policy without frustrating Texas insurance law. 345 F.3d at 297–301. The controlling question is whether the federal and state regulatory goals are "in harmony." *Id.* at 299.

30. Here, by contrast, Plaintiffs ask the Court to calculate additional TWIA policy benefits, award those amounts as RICO damages, treble them, and certify a federal class. (Pls.' Compl. ¶¶ 258–286, ECF No. 1). That is not harmony. It substitutes broader federal litigation and remedies for Chapter 2210's prescribed claim-dispute procedures and remedial limits, thereby displacing rather than complementing Texas's regulatory scheme.

31. *SFR Services* addressed the same essential problem. There, a contractor alleged that an insurer and independent adjusting firms used altered hurricane-loss reports and estimates to deny or underpay claims, then recast those disputes as a RICO enterprise. *SFR Servs.*, 2022 WL 7055906, at *1–2. The court held that McCarran-Ferguson barred the claim because RICO would circumvent Florida's prescribed insurance remedies and conditions. *Id.* at *3–4. The court dismissed the claim with prejudice after also finding that the complaint failed Rule 9(b). *SFR Servs.*, 2022 WL 7055906, at *3–5. The conflict is even sharper here because Chapter 2210 expressly reaches claims relating to TWIA insured

losses regardless of theory or damages, makes its remedies exclusive, directs disputes over accepted amounts to appraisal, and limits additional and punitive damages.

32. Plaintiffs cannot avoid McCarran-Ferguson by naming participants in the TWIA claim-adjustment process rather than TWIA alone. The Complaint alleges that Leading Edge supplied field-adjusting services, DeVilbiss reviewed and revised estimates within that workflow, and the resulting claim materials were returned to TWIA, which retained final authority over the claim determinations. Chapter 2210 reaches all claims against a TWIA "agent or representative" that relate to an insured loss, pleaded by claimants. Tex. Ins. Code §§ 2210.571(2), 2210.572(a). Chapter 2210 supplies the exclusive remedies because the pleaded claims arise from services allegedly performed by TWIA's agents or representatives and relate directly to TWIA-insured losses, regardless of the theory asserted or damages sought. Plaintiffs still seek the same allegedly unpaid TWIA benefits through remedies that would circumvent Texas law's prescribed procedures and limits. Plaintiffs' application of RICO creates the impairment McCarran-Ferguson forbids. Counts I, II, and III should be dismissed.

**B. The Complaint Does Not Plead Fraud with Particularity Under FRCP 9(b)**

33. Plaintiffs' RICO theory begins with an unremarkable fact: estimates and claim materials moved electronically through a review process. (Pls.' Compl. ¶¶ 12, 16, 20, 66–68, 80–83, ECF No. 1). Plaintiffs have not adequately pleaded mail or wire fraud. Rule 9(b) requires the particular communication, speaker, time, place, falsity, and basis for attributing each predicate act to each moving Defendant. *Crosswell*, 120 F.4th at 184;

*Benchmark*, 343 F.3d at 724. Collective references to "Defendants" or the "Enterprise" cannot supply those particulars. *Southland*, 365 F.3d at 365.

34. The allegations against Hansen Scott and Leading Edge fall well short. The Complaint alleges that Leading Edge participated in the 2024 claim workflow and that Hansen Scott is its successor but identifies no fraudulent communication attributable to Hansen Scott or Leading Edge, its speaker, timing, place, or falsity. (Pls.' Compl. ¶¶ 33–35, 51–64, 71–84, ECF No. 1). *Southland* does not permit allegations against others to be imputed to either entity without facts connecting it to the alleged fraud. 365 F.3d at 365.

35. The Complaint says more about DeVilbiss but Plaintiffs still have not pleaded predicate fraud with particularity with respect to DeVilbiss. Plaintiffs allege that DeVilbiss accessed Olivares's estimates through Xactimate/XactAnalysis, accepted collaboration or ownership permissions, revised the estimates, returned them through the claim workflow, and left Olivares identified as the estimator. (Pls.' Compl. ¶¶ 21–24, 81–83, 110–117, 146–153, 176–183, 193, 197–198, ECF No. 1). Those allegations identify the actor, revisions, and certain dates and electronic events. They do not tie each alleged transmission to a particular false or misleading representation, plead facts supporting fraudulent intent, or identify two defendant-specific communications constituting mail or wire fraud. *Crosswell*, 120 F.4th at 184–89; *Benchmark*, 343 F.3d at 724. Electronic access, revisions, and routing are not enough

36. Plaintiffs cannot defer the missing particulars to discovery. The Complaint says they expect discovery to produce routing records, server paths, email identifiers, file hashes, mailing logs, and payment records. (Pls.' Compl. ¶¶ 202–205, ECF No. 1). Even

when facts are peculiarly within a defendant's knowledge, Rule 9(b) requires the factual basis for the pleaded belief. *Benchmark*, 343 F.3d at 724. Discovery may test a properly pleaded fraud claim; it cannot create one.

37. *SFR Services* is persuasive. There, allegations of altered hurricane-loss reports and estimates, electronic communications, and a coordinated scheme involving an insurer and independent adjusting firms still failed because the complaint did not identify defendant-specific predicate fraud. *SFR Servs.,* 2022 WL 7055906, at *4–5. The same defect is present here. Plaintiffs describe a disputed estimate-review process but do not plead two particular acts of mail or wire fraud by Hansen Scott, Leading Edge, or DeVilbiss.

38. Those defects dispose of all counts. Count I lacks adequately pleaded predicate acts. Counts II and III lack facts showing that Leading Edge, Hansen Scott, or DeVilbiss agreed that a substantive RICO offense would be committed and knew of and agreed to the conspiracy's overall objective. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). Counts I, II, and III should be dismissed.

## VII. CONCLUSION

39. This case should end at the pleading stage. Plaintiffs seek additional TWIA policy benefits, treble damages, and class relief by recasting disputes over claim estimates and amounts as federal racketeering. McCarran-Ferguson does not permit RICO to displace Chapter 2210's prescribed procedures and remedial limits. The Complaint also fails to plead two particular acts of mail or wire fraud by Hansen Scott, Leading Edge, or DeVilbiss or a defendant-specific agreement to commit a substantive RICO offense. *SFR Services*

dismissed materially analogous RICO claims with prejudice because McCarran-Ferguson presented an incurable legal bar and the operative pleading failed Rule 9(b). The same legal bar applies here. The Court should dismiss Counts I, II, and III against the moving Defendants with prejudice or, at minimum, require Plaintiffs to identify in any request for leave the specific facts that would cure these defects.

## VIII. INCORPORATION BY REFERENCE

40. Hansen Scott Holdings, LLC, Leading Edge Claims Service, LLC, and David R. DeVilbiss hereby incorporate by reference, adopt, and join in all prior or future Rule 12(b)(6) motions of co-defendants TWIA and RYZE.

## IX. PRAYER

41. FOR THE REASONS ABOVE, Hansen Scott Holdings, LLC, Leading Edge Claims Service, LLC and David R. DeVilbiss respectfully request that the Court dismiss Counts I, II, and III against them and grant any further relief to which they are entitled.

RESPECTFULLY SUBMITTED,

/S/ TIMOTHY B. SOEFJE

**TIMOTHY B. SOEFJE**
TEXAS BAR NO.: 00791700
SDTX BAR NO. 423880
**FREEMAN MATHIS & GARY, LLP**
7160 DALLAS PKWY, SUITE 625
PLANO, TEXAS 75024
TELEPHONE: (469) 895-3009
EMAIL: TIM.SOEFJE@FMGLAW.COM
**ATTORNEYS FOR DEFENDANTS LEADING EDGE DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was filed electronically on the 15th day of October 2026 and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfied the requirements of Fed. R. Civ. P. 5(b)(2)(D).

*/S/ TIMOTHY B. SOEFJE*
TIMOTHY B. SOEFJE